Tara B. Keller, Esq., CA #265916
CONSUMER ATTORNEYS PLLC
68-29 Main Street
Flushing, NY 11367
(T): 718-874-6929
(E): tkeller@consumerattorneys.com

*Attorneys for Plaintiff*
*Karina Luzanilla*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

KARINA LUZANILLA,

               Plaintiff,

vs.

THE RETAIL EQUATION, INC.,

               Defendant.

Case No.: 2:26-cv-01179-JFW-MARx

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Karina Luzanilla ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against The Retail Equation, Inc., ("TRE") and states as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## PARTIES

2. Plaintiff Karina Luzanilla ("Plaintiff") resides in Long Beach,

California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

3. Defendant The Retail Equation, Inc. ("TRE") is a Delaware corporation headquartered in Irvine, California, USA, with its principal and mailing address at 6430 Oak Canyon Suite 250, Irvine, CA 92618. TRE is authorized to do business in the State of California, including within this District.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTS

### Defendant is a Consumer Reporting Agency

6. TRE is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because it regularly engages, for monetary fees, in the practice of assembling, evaluating, and maintaining consumer information, such as consumers' retail transaction histories, return activity, and behavioral data, and then furnishes such information to third parties.

7. TRE collects and aggregates consumer-identifying information, including names, driver's license numbers, and transaction-level retail data, from numerous retailers nationwide, including but not limited to AutoZone and Home Depot. TRE uses this information to create individualized consumer profiles and risk scores reflecting a consumer's likelihood of engaging in excessive or abusive return

2

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

activity.

8.     TRE then furnishes these profiles and reports, commonly referred to as "Retail Activity Reports" or "RARs", to subscribing merchants in connection with real-time transaction decisions for business transactions initiated by the consumer, including whether to approve or deny a consumer's return or refund request. The Retail Activity Reports prepared and disseminated by TRE constitute "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) as such reports contain information bearing on consumers' character, general reputation, personal characteristics, and mode of living, including alleged patterns of return behavior and purported risk of fraud or abuse.

9.     Upon information and belief, TRE's reports are generated through automated systems that match consumer identifiers (such as driver's license numbers) to transaction data across multiple retailers and jurisdictions, thereby assembling and evaluating information bearing on a consumer's reputation, character, and mode of living.

10.     TRE maintains consumer files, provides disclosures to consumers upon request, and processes consumer disputes, further evidencing that it operates as a consumer reporting agency subject to the requirements of the FCRA.

**Denial of Plaintiff's Application for Refund with AutoZone April 2025**

11.     On April 1, 2025, Plaintiff went to an AutoZone retail location to return merchandise and obtain a refund.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

12.     Plaintiff sought to return some merchandise, specifically car battery equipment, she no longer needed.

13.     AutoZone contracted with Defendant to conduct a background check of Plaintiff's retail transaction histories and risk assessment.

14.     AutoZone utilized the consumer report or Retail Activity Report, generated by Defendant, to determine a Plaintiff's eligibility for refunds, as it does with its other customers.

15.     AutoZone declined to accept Plaintiff's returned merchandise and refused to provide a refund, informing Plaintiff that, according to the Retail Activity Report, Plaintiff engaged in too many returns and exchanges indicating fraudulent or nefarious activity.

16.     AutoZone's customer service representative advised Plaintiff to obtain a copy of her Retail Activity Report from Defendant to understand the reason AutoZone denied accepting the return and refunding Plaintiff's money.

**Defendant TRE Reports Inaccurate Return Activity Associated with Plaintiff**

17.     Plaintiff obtained a copy of her April 2, 2025 Retail Activity Report from Defendant, which listed all of her transactions with AutoZone over a two-year period from the date of the report.

18.     Plaintiff's April 2, 2025 Retail Activity Report encompassed 497 pages and stated AutoZone refunded Plaintiff $43,890.23 for merchandise, while refusing to refund another $129,223.96 for merchandise.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

19.    Furthermore, the April 2, 2025 Retail Activity Report asserted that Plaintiff engaged in return transactions in multiple states, including California, Colorado, Nevada, Arizona, Virginia, Indiana, Utah, and Texas.

20.    In fact, Plaintiff did not engage in the volume or pattern of return activity reflected in the Retail Activity Report.

21.    Plaintiff did not initiate, authorize, or participate in return transactions in the aforementioned states, and the reported volume, frequency, and geographic dispersion of such activity are inconsistent with Plaintiff's actual consumer behavior and physical presence.

22.    The denial caused Plaintiff confusion, distress, and embarrassment as it was inconsistent with her actual return history and falsely suggested improper consumer conduct.

23.    Defendant's reporting inaccurately associated Plaintiff with extensive and improper return activity, falsely characterizing her as a high-risk customer with an abusive return history.

24.    In reality, Plaintiff made no more than two or three returns to AutoZone during the two-year period

25.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to AutoZone inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**Plaintiff's Dispute with AutoZone Regarding Defendant's Inaccurate
Reporting May 2025**

26.  On May 14, 2025, Plaintiff contacted AutoZone customer service and disputed the numerous return transactions attributed to her, explaining that she did not recognize the transactions reflected under her name. Plaintiff also contacted local AutoZone stores, but those stores were unable to locate the transactions due to inconsistencies in transaction number formatting.

27.  Later that same day, AutoZone responded that it was unable to locate or track the transactions at issue and advised Plaintiff to file a police report.

28.  On May 20, 2025, Plaintiff received a communication from AutoZone's External Fraud Department, confirming that only three non-receipted refunds were associated with Plaintiff's actual driver's license, all of which occurred years earlier.

29.  This information directly contradicted the extensive return activity reported by Defendant and further confirmed that the transactions reflected in Plaintiff's Retail Activity Report did not belong to her.

**Denial of Plaintiff's Application for Refund with Home Depot May 2025**

30.  On May 23, 2025, Plaintiff attempted to return an item purchased from the Home Depot, but the Home Depot refused to complete the transaction.

31.  Upon information and belief, Home Depot contracted with Defendant to conduct a background check of Plaintiff's retail transaction histories and risk assessment.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

32.     Home Depot utilized the consumer report or Retail Activity Report, generated by Defendant, to determine a Plaintiff's eligibility for refunds, as it does with its other customers.

33.     Thereafter, Home Depot declined to accept Plaintiff's returned merchandise and refused to provide a refund, informing Plaintiff that, according to the Retail Activity Report, Plaintiff engaged in too many returns and exchanges indicating fraudulent or nefarious activity.

34.     On May 24, 2025, Plaintiff received a copy of another Retail Activity Report in connection with transactions at Home Depot for the past two years.

35.     Upon review of the May 24, 2025 Retail Activity Report Defendant sold to AutoZone, Plaintiff learned that Defendant erroneously reported 12 pages of transactions demonstrating that Plaintiff returned 53 items totaling $3,327.86 and that Home Deport refused 263 refunds totaling $26,267.62.

36.     Once again, Defendant's reporting inaccurately associated Plaintiff with extensive and improper return activity, falsely characterizing her as a high-risk customer with an abusive return history.

37.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Home Depot inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**Plaintiff Disputes Misinformation in the AutoZone Retail Activity Report with Defendant May 2025**

38.     On May 29, 2025, Plaintiff sent a dispute letter to Defendant, disputing the erroneous transaction and return history in the consumer report it sold to AutoZone in connection with Plaintiff's request to return items for a refund.

39.     Plaintiff sufficiently identified herself and provided documentation supporting her dispute. Plaintiff asked Defendant to investigate and correct the information.

40.     However, Defendant failed to respond to Plaintiff's dispute and failed to issue a corrected report to AutoZone.

41.     Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's May 2025 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff Disputes Defendant's Inaccurate Reporting Again June 2025**

42.     On or about June 26, 2025, Plaintiff sent another dispute letter to Defendant, disputing the erroneous transaction and return history in the consumer report it sold to AutoZone and Home Depot in connection with Plaintiff's request to return items for a refund (the "Second Dispute").

43.     Plaintiff sufficiently identified herself and provided documentation supporting her dispute. Plaintiff asked Defendant to investigate and correct the information.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

44.    Upon information and belief, Defendant received Plaintiff's Second Dispute on July 8, 2026.

45.    Thereafter, on July 9, 2025, Defendant emailed Plaintiff in connection with Plaintiff's Second Dispute, requesting the transaction ID number.

46.    Plaintiff responded to Defendant with the requested information and asked Defendant for an update on its investigation.

47.    Thereafter, Defendant failed to provide Plaintiff with the results of the reinvestigation.

48.    Upon information and belief, Defendant failed to adequately review all relevant information provided by Plaintiff in support of her disputes.

49.    Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's Second Dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

## Defendant's Continued Inaccurate Reporting

50.    On November 17, 2025, Plaintiff attempted to complete a return and refund at an AutoZone retail location in Long Beach, CA.

51.    AutoZone's employee again refused to process the return and refund, citing that AutoZone's system would not accept her return and process her refund per information provided from Defendant.

52.    Instead of correcting the inaccurate reporting in full, and with knowledge of Plaintiff's disputes, Defendant continued to associate Plaintiff with

stigmatizing return transaction history that did not belong to her.

53. In preparing and selling a consumer report about Plaintiff, wherein Defendant once again published to AutoZone inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

## Plaintiff's Damages

54. Plaintiff reasonably believes that Defendant continues to publish that Plaintiff remained associated with stigmatizing return activity.

55. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to out-of-pocket losses, loss of the ability to complete legitimate retail transactions, and the denial of refunds to which she was otherwise entitled.

56. Plaintiff was wrongfully denied refund transactions based on Defendant's inaccurate reporting, causing her financial harm, including the loss of funds for merchandise she was unable to return and the potential need to repurchase goods.

57. Plaintiff expended substantial time and effort attempting to investigate, dispute, and correct the inaccurate information reported by Defendant, including communicating with AutoZone and Defendant, obtaining and reviewing reports, and attempting to identify transactions that did not belong to her.

58. Plaintiff also suffered emotional distress, including frustration, anxiety,

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

embarrassment, and mental anguish, as a result of being falsely portrayed as engaging in excessive or abusive return activity and being repeatedly denied legitimate transactions.

59.     Furthermore, Defendant's inaccurate reporting harmed Plaintiff's reputation and standing as a consumer by falsely labeling her as a high-risk or abusive return customer, thereby subjecting her to suspicion, scrutiny, and adverse treatment by retailers.

60.     Plaintiff suffers ongoing harm and uncertainty regarding her ability to complete future retail transactions, including concern that she will continue to be denied returns or refunds based on Defendant's inaccurate reporting.

61.     Moreover, Defendant's failure to correct the inaccurate information after Plaintiff's disputes exacerbated Plaintiff's damages by prolonging her inability to complete transactions and increasing her emotional distress.

62.      Defendant's conduct subjected Plaintiff to repeated and foreseeable denials of ordinary consumer transactions, transforming routine retail interactions into humiliating and stressful experiences and undermining Plaintiff's confidence in her ability to engage in everyday commerce.

63.     At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

64.    At all times pertinent hereto, the conduct of Defendant, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

65.    Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

66.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of the ability to benefit from legitimate retail transactions and obtain refunds to which she was otherwise entitled; detriment to her consumer standing and reputation as a retail customer; the expenditure of substantial time, effort, and labor and effort disputing and trying to correct the inaccurate return activity maintained and disseminated by Defendant; and emotional distress, including humiliation, embarrassment, frustration, and anxiety resulting from repeated denials and the implication that she had engaged in improper or abusive retail behavior.

## COUNT I
## 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

67.    Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

68.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

69.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

70.     At all times pertinent hereto, each of the above-mentioned Retail Activity Reports were a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

71.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it published and maintained concerning Plaintiff.

72.     Defendant's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

73.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against Defendant TRE)**

74.     Plaintiff repeats and realleges the foregoing allegations as if set forth in

full herein.

75.     The FCRA mandates that a consumer reporting agency ("CRA") conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

76.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

77.     On at least one occasion during 2025, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the consumer report that is patently inaccurate, misleading, and highly damaging to her.

78.     In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

79.     Defendant violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) after Plaintiff notified them that, contrary to what was reported in Plaintiff's file, she was not deceased, and by failing to

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

maintain reasonable procedures to investigate Plaintiff's dispute(s).

80.   Defendant's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.   Plaintiff is entitled to recover statutory damages, punitive damages, and attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 26, 2026            */s/ Tara B. Keller*
                                 Tara B. Keller, Esq., CA #265916
                                 CONSUMER ATTORNEYS PLLC
                                 68-29 Main Street
                                 Flushing, NY 11367
                                 (T): 718-874-6929
                                 (E): tkeller@consumerattorneys.com

                                 *Attorneys for Plaintiff*
                                 *Karina Luzanilla*